

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| COLTON QUADE BRANNING, | § | No. 08-24-00030-CR |
| Appellant, | § | Appeal from the |
| v. | § | 111th District Court |
| THE STATE OF TEXAS, | § | of Webb County, Texas |
| Appellee. | § | (TC# 2021CRB000425D2) |

## MEMORANDUM OPINION[1]

A jury found Appellant Colton Quade Branning guilty of murder and assessed punishment at 40 years' confinement plus a $10,000 fine. Appellant raises two issues on appeal. First, he contends there was "fundamental error" affecting his right to a fair trial because the trial court erred by admitting evidence that he had been in prison, evidence of other crimes, and evidence that he invoked his right to remain silent, and by failing to transcribe the video-recordings of his four out-of-court declarations that were played for the jury. Second, he contends the trial court failed to include an instruction on "mere presence" in the jury charge. Finding no error, we affirm.

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

# I. BACKGROUND

Appellant does not challenge the sufficiency of the evidence to sustain his conviction. We nonetheless provide a brief recitation of facts in the light most favorable to the verdict to provide context for the determination of the issues presented on appeal. *See Banda v. State*, 768 S.W.2d 294 (Tex. Crim. App. 1989) (en banc) ("[A] brief recitation of the facts in the light most favorable to the verdict is useful" even where the appellant does not bring a sufficiency challenge); *see also* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *Woodberry v. State*, No. 05-00-01823-CR, 2001 WL 1525906, at *1 (Tex. App.—Dallas Dec. 3, 2001, no pet.) (not designated for publication) (a lengthy recitation of the facts related to the offenses is unnecessary where appellant does not challenge sufficiency of the evidence).

The grand jury indicted Appellant on one count of murder. The indictment alleged that, on February 23, 2021, Appellant did then and there intentionally or knowingly cause the death of Justin Heath Allen, by shooting him in the head. Appellant pleaded not guilty, and the case proceeded to a jury trial. During the State's case in chief, it presented 16 witnesses and over 100 exhibits. For the defense, Appellant presented testimony of a video photographer who took aerial footage of the crime scene and admitted into evidence exhibits accompanying that testimony.

The evidence presented at trial showed that on the morning of February 23, 2021, an officer with the Laredo Police Department (LPD) happened upon a dead body lying on the ground. Once he saw blood, he radioed for back up and informed his supervisor. LPD officers assigned to investigate collected shell casings from the scene, surveillance video of the surrounding area, and a purported murder weapon found in a nearby trashcan. Eventually, LPD identified the body as

2

Justin Heath Allen. Officers also identified a Dodge vehicle on the surveillance video of the scene, and that vehicle was linked to Appellant.

The State also presented testimony of Brooklyn Lansford, a cousin of Appellant and fiancée of Allen. She testified that she and Allen were living in Mississippi. She described that days earlier, on February 13, 2021, Appellant had contacted her and Allen. He mentioned he had a construction job in Texas and, if Allen wanted to join him, they could drive together to Laredo. A couple of days later, after Allen left with Appellant, he texted Lansford, describing the construction job as being "fake." He complained that Appellant had gotten him involved in human smuggling operations across the U.S.–Mexico border. Lansford further testified that, on February 21, Allen texted he had told Appellant he needed to return to Mississippi to be with his family. Days later, it was discovered that Allen had been killed. Lansford told investigators to find Appellant "because he either did it or he knows something."

The jury found Appellant guilty of murder. Following the punishment phase, the jury assessed punishment at 40 years' confinement and a fine of $10,000. The trial court entered a judgment of conviction in accordance with the jury's verdict. Appellant filed a motion for new trial which was overruled by operation of law. This appeal followed.

## II.    EVIDENTIARY AND TRIAL ERRORS

In his first issue on appeal, which includes several sub-issues, Appellant contends there was "fundamental error" because he was deprived of his right to a fair trial. Aside from this bare assertion, he does not state why any of the alleged errors rise to the level of fundamental error, how the alleged errors in any way influenced the jury's verdict, or how the alleged errors deprived him of a fair trial. Furthermore, aside from citing to certain rules of evidence, Appellant's brief lacks legal arguments under each alleged error, and more generally, his brief is disjointed and

difficult to follow. However, despite this lack of clear and concise arguments, we liberally construe Appellant's brief, discerning his argument as raising evidentiary complaints and other errors about the conduct of the trial. To the extent Appellant argues otherwise, any other complaint is waived by inadequate briefing. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

As for discerned complaints, Appellant complains in two sub-issues that the trial court erred in allowing the jury to hear testimony that he had previously been in prison and that he had been arrested for possession of marijuana while Allen's murder was being investigated. In a third sub-issue, Appellant challenges the testimony of two witnesses, asserting the trial court erred in admitting evidence of his arrest for marijuana possession while LPS was investigating the murder. In his final two sub-issues, he complains the trial court admitted evidence that he invoked his right to remain silent, and it failed to transcribe out-of-court declarations that were "played" for the jury. We consider each sub-issue in turn.

A. **Standard of review**

The admission of evidence is generally reviewed under the deferential abuse-of-discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). Failure to object to the admission of evidence waives review of the matter. *See* Tex. R. App. P. 33.1(a)(1); *Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008). Furthermore, the failure to pursue a adverse ruling on an objection also waives the complaint. *See* Tex. R. App. P. 33.1(a)(2); *White v. State*, No. 08-23-00238-CR, 2024 WL 2002212, at *8 (Tex. App.—El Paso May 6, 2024, no pet.) (mem. op., not designated for publication) ("To preserve an issue for appellate review, the complaining party must make a timely, specific objection and obtain a ruling.").

However, in a criminal case, a court may "take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved." Tex. R. Evid. 103(e). Fundamental error falls into two categories: (1) the denial of absolute, systemic requirements and (2) the violation of rights that are "waivable-only." *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (en banc). "Only rights that are 'fundamental to the proper functioning of our adjudicatory system' are non-forfeitable." *Cruz v. State*, 698 S.W.3d 265, 268 (Tex. Crim. App. 2024). These rights are few. But courts do recognize they "include rights to counsel and jury trial," "a sentencing judge's consideration of the correct range of punishment," "a jury trial free of judicial comments on the weight of the evidence," and "appointment of an interpreter[.]" *Id.*

Here, Appellant has not cited to any authority applying fundamental error principles to the unobjected-to evidence, and most courts have rejected similar arguments. *See Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008); *Robinson v. State*, No. 01-19-00211-CR, 2020 WL 3393067, at *6–7 (Tex. App.—Houston [1st Dist.] June 18, 2020, no pet.) (mem. op., not designated for publication) (refusing to elevate incurable jury argument to level of fundamental error that would be appealable without having objected); *Dowdy v. State*, No. 03-01-00571-CR, 2002 WL 1987642, at *2–4 (Tex. App.—Austin Aug. 30, 2002, no pet.) (not designated for publication) (refusing to analyze voir dire statements and admitted evidence under fundamental error principles to remove need for objection).

Therefore, we analyze each of Appellant's evidentiary and trial complaints to determine whether the complaint was preserved for our review and, if so, whether the trial court abused its discretion by admitting the complained-of evidence.

### B. Application

#### (1) Testimony that Appellant had been in prison

First, Appellant contends that evidence that he had been in prison was erroneously admitted. He contends the evidence was "totally inadmissible."

The evidence Appellant complains of came through Lansford's testimony. Specifically, Lansford was asked how Allen met Appellant and she replied, "when [Appellant] got released from prison[.]" Lansford did not elaborate on why Appellant had been in prison. Defense counsel objected on lack of foundation. The State pointed out that Appellant himself made a similar statement in his interview, saying "I just got out of prison." The trial court replied, "And we just heard that yesterday." Defense counsel did not obtain a ruling on the objection. When asked again, Lansford stated "[w]hen [Appellant] got released from prison, he came to see me, and they met because me and [Allen] were living together." To this response, Appellant's counsel lodged no objection.

Although Appellant initially objected as to foundation, he neither obtained a ruling nor did he object a second time when the witness repeated the same answer. Therefore, this complaint was not preserved for our review. *See* Tex. R. App. P. 33.1(a)(2); *White*, 2024 WL 2002212, at *8.

We overrule the first two sub-issues of issue one.

#### (2) Evidence of Appellant's marijuana possession

Next, Appellant challenges the testimony of two witnesses, as to both he asserts the trial court erred in admitting evidence of his arrest for marijuana possession which occurred while LPS was investigating Allen's murder.

First, LPD Sergeant Luis O. Mata, Jr. testified he was the first investigator assigned to the scene where Allen's body had been found. He observed Allen was bleeding from the back of his

head from what appeared to be a gunshot wound.[2]  When their investigation led to Appellant as a person of interest, he was no longer in Laredo. LPD then issued a "BOLO"[3]  for the purpose of informing statewide law enforcement to be on the lookout for Appellant's vehicle. Sergeant Mata was again asked about the BOLO:

> SEGREANT MATA: At that point, we [disseminated] a BOLO advisory. On that specific day, we just tried to get as much evidence as we could with the surveillance video; and then, maybe at about 10:00 p.m., *we received information that [Appellant] had been apprehended outside of Houston for a misdemeanor possession of marijuana*. [Emphasis added.]

> DEFENSE COUNSEL: Objection. Your Honor, may we approach?

> THE COURT: You may.

.     .     .

> THE COURT: What's your objection?

> DEFENSE COUNSEL: Your Honor, this goes to the motion in limine; and as far as the 404(b), a Class B of marijuana cannot be used. What he is using–well, number one, it's hearsay; number two, it's a prior bad act that occurred that they are bringing in.
>
> *Basically, what he is saying, is that he was detained because of the BOLO or whatever. He didn't have to add in the possession of marijuana.* He is doing it–it's being done mainly to prejudice the jury against the Defendant based on what the basis was for the detention. [Emphasis added.]

The trial court overruled the objection.

Second, Eric Lopez, a Texas Ranger with the Texas Department of Public Safety, testified he was tasked with finding Appellant's vehicle that was somewhere in Houston heading to

---

[2] The medical examiner pronounced Allen dead at 10:23 a.m. on February 23rd. After the autopsy, the medical examiner determined Allen died from a gunshot wound to his head.

[3] A "BOLO" is a radio communication to all officers to "be on the lookout."

Louisiana. The vehicle was located in the parking lot of a hotel, and Appellant was detained at the hotel and placed into a patrol vehicle. Ranger Lopez said that before Appellant was placed in the patrol vehicle, he was searched and marijuana and a large amount of cash was found on his person. Ranger Lopez stated Appellant was then transported to the highway patrol division for an interview. Defense counsel did not object to this testimony.[4]

Appellant contends the trial court erred by admitting evidence that he had been arrested for possession of marijuana while Allen's murder was being investigated. Neither witness testified that Appellant had been arrested. Both Sergeant Mata and Ranger Lopez stated only that marijuana was in Appellant's possession when he was detained at the hotel. Defense counsel's precise objection was to Sergeant Mata's testimony that Appellant had been "detained because of the BOLO or whatever. He didn't have to add in the possession of marijuana." Appellant has failed to show the trial court erred in admitting the testimony.

Moreover, a party must object every time the allegedly inadmissible evidence is offered or obtain a running objection to the admission of the evidence. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Any error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Id.* "Thus, a party may not complain on appeal about improperly admitted evidence if the same or similar evidence is admitted without objection at another point in the trial, either before or after the admission of the disputed evidence." *Farias v. State*, No. 08-23-00234-CR, 2024 WL 3349079, at *14 (Tex. App.—El Paso July 9, 2024, no pet.) (mem. op., not designated for publication). We conclude that even if the trial court erred by

---

[4] Later, the State posed the following question to Sergeant Jonathan Castillo: "So, then he is taken in for, I believe that the testimony said, for possession of marijuana–an ounce in his pocket–what, if anything, happens next?" Defense counsel did not object to this question.

admitting Sergeant Mata's testimony, the alleged error was cured because Appellant did not object to Ranger Lopez's testimony.

We overrule the second sub-issue of issue one.

### (3) Improper jury argument

In a third sub-issue, Appellant complains the State presented improper closing argument where in the prosecutor implied he had committed other crimes. Specifically, the State argued:

> They were in a gang doing criminal business together; yet, people get shot over criminal business all of the time. Oh, wouldn't we–wouldn't we have more violent crimes? [Defense counsel] knows the Rules of Evidence . . .

The trial court sustained defense counsel's "improper argument" objection and instructed the jury to disregard but denied the request for a mistrial.

On appeal, Appellant points to the State's statement as an example of how evidence of other crimes was admitted, but he does not explain how the trial court erred because his objection was sustained and he does not assign error to the trial court's denial of his request for a mistrial. Therefore, because his objection was sustained and the jury instructed to disregard, Appellant's inadequately briefed argument presents nothing for our review. *See* Tex. R. App. P. 38.1(i); *Blanco v. State*, No. 08-15-00082-CR, 2017 WL 604050, at *5 (Tex. App.—El Paso Feb. 15, 2017, no pet.) (not designated for publication) ("When a party's argument consists only of conclusory statements without proper citation to appropriate authorities or lacks substantive analysis, the party has inadequately briefed the case and presents nothing for our review.").

We overrule the third sub-issue.

### (4) Limiting instruction

Appellant's next complaint contends that "[i]f a limiting instruction had been requested and given," the jury would have been instructed it could not consider the evidence to prove he was

a bad person. He then provides what instruction should have been given if it "had been requested and given." Appellant did not further elaborate or develop his complaint.

When evidence is admissible for one purpose only, but not for another purpose, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." *Arana v. State*, 1 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing Tex. R. Evid. 105(a)). The party seeking to limit the purpose for which evidence can be considered has the burden to request that the jury be given a limiting instruction. *Arana*, 1 S.W.3d at 829 ("[I]n the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.").

Appellant did not request a limiting instruction, and, on appeal, he does not argue the trial court should have sua sponte included such an instruction. *See Pardue v. State*, 252 S.W.3d 690, 698 (Tex. App.—Texarkana 2008, no pet.) (holding that because defendant failed to request a limiting instruction when exhibit was admitted, he could not complain about its admission for all purposes on appeal). Therefore, Appellant has failed to show the trial court committed error in not submitting a limited instruction.

We overrule Appellant's fourth sub-issue.

### (5) Transcriptions of video evidence

In his next sub-issue, Appellant asserts four videos were played for the jury, but the portions of the video heard by the jury were not transcribed by the court reporter. He argues that a new trial should be granted "if the missing portion of the record is necessary to the appeal's resolution."

"To complain of a court reporter's failure to transcribe the audio portion of a videotaped statement that was played to the jury during the guilt-innocence and punishment phases of the trial,

the defendant must have preserved error by objecting before the trial court." *Francis v. State*, No. 14-17-00958-CR, 2019 WL 5565970, at \*15 (Tex. App.—Houston [14th Dist.] Oct. 29, 2019, pet. ref'd) (mem. op., not designated for publication); *see also Williams v. State*, 937 S.W.2d 479, 486 (Tex. Crim. App. 1996) (appellant waived complaint because he did not object to court reporter's failure to take notes while videotape was played and he did not object at any stage of trial to court reporter's failure to record his videotaped statement). When the State tendered the exhibits for admission into evidence, defense counsel stated, "no objection," and never objected to the court reporter's failure to transcribe the audio portion of the videos. Accordingly, any error in not transcribing the audio was not preserved.

We also disagree with Appellant's characterization of the portions of the recordings as "missing." Appellant contends State's Exhibit 151, a video-recording of Appellant's interview with Sergeant Castillo, was played for the jury, then repeatedly stopped, and started again. Appellant contends the video is approximately three hours long and, according to him, the contents of what the jury heard are not part of the appellate record because those portions were not transcribed by the court reporter.

The video, which is part of the appellate record, was stopped at several points to allow the State to ask clarifying questions of the witness. However, each time the video was paused, it was re-started from the stopping point. The record reveals there were portions of the video not played for the jury—a portion of the video showing Appellant eating, and portions where the State jumped ahead to a time mark specified in the reporter's record. Therefore, contrary to Appellant's contention that this Court must "guess" about the contents heard by the jury, the entire video with few noted exceptions was heard by the jury and is not "missing" from the appellate record. The other three exhibits are also part of the appellate record. State's Exhibit 9 (a video-recording of

11

Appellant's interview with Ranger Lopez and another investigator), Exhibit 149 (a recording of a telephone call between Appellant and Sergeant Castillo), and Exhibit 150 (an audio-recording of Sergeant Castillo's telephone interview with Appellant) were stopped at several points to allow the State to ask clarifying questions. However, each time the recording was paused, it was re-started from the stopping point.

Therefore, contrary to Appellant's contention that this Court must "guess" about the contents heard by the jury, these recordings were heard by the jury and are not "missing" from the appellate record.

We overrule Appellant's fifth sub-issue regarding the video exhibits.

### (6) Appellant's right to remain silent

Appellant's final sub-issue asserts that there was evidence improperly introduced showing that he invoked his right to remain silent. Specifically, Appellant points to Ranger Lopez's testimony when the State sought to introduce the video-recording of Appellant's interview with Ranger Lopez and another investigator:

> THE STATE: Okay. Would you, and were you able to advise [Appellant] of his rights and his rights to speak to you, as well as his right to remain silent and the right to an attorney, and the right to have an attorney appointed and waiving them before speaking to you?
>
> RANGER LOPEZ: Yes.
>
> THE STATE: And does the recording reflect that [Appellant] waived those rights?
>
> RANGER LOPEZ: Yes.

Defense counsel did not object to the above questions or answers and stated "no objection" to the admission of the video into evidence. After the video was played for the jury, Ranger Lopez was asked what he did after Appellant invoked his right to counsel and Lopez replied, "Well, [] the

12

interview ended, and I just followed up with several other tasks for the case itself." Again, defense counsel lodged no objection to the question or answer.

As a general rule, a defendant's invocation of his right to remain silent, after he has been arrested and received his *Miranda* warnings, may not be used against him at trial. *See Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995) (en banc); *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). On appeal, Appellant cites to *Hardie* as support for his argument that his invocation of his right to remain silent was improperly admitted. Appellant's reliance on *Hardie* is misplaced. First, in *Hardie*, defense counsel objected to the jury hearing an audio portion of a videotape where, after police asked the appellant to submit to an intoxilyzer, the appellant stated he would have to wait until either his mother or his lawyer arrived. 807 S.W.2d at 320. The officers told him they could not wait for anyone, and again asked him to submit to an intoxilyzer. *Id.* The appellant again responded he had to wait for a decision from either his lawyer or his parents and that he was not sure what his rights were. *Id.* The arresting officer proceeded to ask him to answer some questions and the appellant then made incriminating statements. *Id.* This was all recorded on videotape and played before the jury over appellant's objections. *Id.*

Here, unlike in *Hardie*, before Appellant was asked any questions, he was advised of his *Miranda* rights, including the right to counsel and to remain silent. After being advised of his rights, Appellant was asked if he would be willing to answer questions. He said "yes" and that he would tell the investigators if he "got uncomfortable and want[ed] an attorney." Over the course of approximately 90 minutes, Appellant answered questions. Toward the end of the recording, Appellant stated he had told them "everything he [knew]," "that's all I [have] to say about it at this point," "[garbled] no further questions," and "I don't know anything else, thank you." Appellant does not cite to any other authority or further develop his argument.

13

Moreover, we conclude Appellant invited error. At trial, Appellant permitted the introduction of the entire audio portion of the videotape into evidence, without objection. On appeal, he now challenges his conviction as improper because he was heard to invoke his right to remain silent. Appellant cannot complain of error he invited. *See Overman v. State*, No. 03-95-00682-CR, 1997 WL 216973, at \*6 (Tex. App.—Austin May 1, 1997, pet. ref'd) (not designated for publication) (appellant permitted introduction of entire audio portion of videotape in evidence and "now assails his conviction as improper because appellant was heard to invoke his right to counsel and right to remain silent"; holding, appellant cannot now complain of his acquiescence to the introduction of inadmissible evidence and "by allowing the jury to hear the entire audio portion of the videotape, appellant waived his right on appeal to complain of its introduction"); *see also Merchant v. State*, No. 14-96-00771-CR, 1998 WL 132908, at \*4 (Tex. App.—Houston [14th Dist.] Mar. 26, 1998, no pet.) (not designated for publication) (appellant contended prosecutor improperly indicated to venire panel that her failure to testify could indicate a prior criminal record and this penalized her for exercising her right to remain silent; holding appellant waived any error because she did not object to these comments).

Accordingly, we conclude Appellant has failed to establish error regarding his right to remain silent. We overrule the remaining sub-issue of issue one.

### III.    LIMITING INSTRUCTION ON "MERE PRESENCE"

In his second issue, Appellant asserts the trial court erred by denying his request for a jury instruction on "mere presence." During the jury charge conference, Appellant's attorney requested an instruction on mere presence:

> DEFENSE COUNSEL: . .specifically on as far as the offense of murder based on the evidence presented yesterday in the Defendant's case-in-chief. There is a–and my client's statements that

14

he made to Detective Castillo, that he was dropping Justin Allen off for a drug deal; and, based on the ability and availability of access from somewhere else, that if the Court believes that in the State's case-in-chief there could be another party–there probably was somebody else that could have done it–and my client could have possibly been a witness or could have been present at the time. So, because of that, we ask the Court to include a mere presence instruction.

TRIAL COURT: It's not a mere presence. That's denied. What else?

In his appellate brief, Appellant quotes from a pattern jury charge on "party liability." He also cites to opinions that are not applicable here. *See Sorto v. State*, 173 S.W.3d 469, 475 (Tex. Crim. App. 2005) (appellant relied on his own statements to support his claim that trial court erroneously refused to instruct the jury on the lesser-included offense of aggravated kidnapping); *Marable v. State*, 85 S.W.3d 287, 295–96 (Tex. Crim. App. 2002) (en banc) (Womack, J., dissenting) (stating Court "must consider the general law for indictments, our application of this law to indictments of principals and accomplices under former penal codes, and the application of the law to indictments of parties under the present penal code" when "[t]he issue in this case is whether a court's charge to the jury may authorize conviction on the theory that the defendant was criminally responsible for the conduct of another when the State did not plead that theory").

Appellant does not argue, much less cite to any authority supporting an argument, that he was entitled to an instruction on "mere presence." Further, we conclude he was not entitled to the instruction. The Court of Criminal Appeals has determined that a "mere presence" instruction is an impermissible comment on the evidence and should not be included in a jury charge. *Beltran De La Torre v. State*, 583 S.W.3d 613, 619, 621 (Tex. Crim. App. 2019) (holding mere presence instruction was an improper comment on weight of the evidence because it was unnecessary to clarify applicable law and drew jury's attention to evidence supporting a particular party's theory

15

of the case); *see also Kersey v. State*, No. 08-20-00037-CR, 2021 WL 5860920, at *6 (Tex. App.—El Paso Dec. 10, 2021, pet. ref'd) (not designated for publication) (citing to *Beltran* and holding trial court erred by including "mere presence" instruction because instruction commented on weight of the evidence because instruction "tended to draw the jury's attention to . . . Appellant's theory that her mere presence at the scene was insufficient evidence to support her guilt").

"When a defendant has no right to a particular instruction, the trial court does not err in refusing to give the instruction." *Bell v. State*, No. 02-14-00056-CR, 2015 WL 1792627, at *2 (Tex. App.—Fort Worth Apr. 16, 2015, no pet.) (mem. op., not designated for publication). Because Appellant was not entitled to a "mere presence" instruction, the trial court did not err by refusing to give the requested instruction. We overrule his second issue.

## IV.    IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. PALAFOX, Justice

February 14, 2025

Before Salas Mendoza C.J., Palafox and Soto, JJ.

(Do Not Publish)